UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § § § § § § § | **United States Courts<br>Southern District of Texas<br>FILED**<br><br>JUL 1 8 2017<br><br>David J. Bradley, Clerk<br>Laredo Division |
| v. | | |
| | | CRIMINAL NO. |
| LUIS MONTES-PATINO, | § § § § § § § | **L-17-560**<br><br>**DS** |
| RAVINDER REDDY GUDIPATI, | § § § § | |
| Defendants. | § § | **FILED UNDER SEAL** |

### INDICTMENT

The Grand Jury charges:

*The Money Laundering Conspiracy*

1.  Beginning in or about October 2011 and continuing through in or about October 2013, the Defendants named herein, together with other persons both known and unknown to the Grand Jury (hereinafter referred to collectively as the "Conspirators"), participated in a conspiracy to launder drug trafficking proceeds obtained from the sale of illegal drugs in the United States (hereinafter "drug proceeds") into Mexico using a technique known as the "black market peso exchange," or "BMPE," which is a form of "trade-based money laundering," or "TBML."

2. TBML refers generally to any method of money laundering in which criminals use trade transactions to transmit and disguise the proceeds of a crime and attempt to legitimize their illicit origins. The BMPE is a method of TBML by which drug proceeds, in the form of United States currency, are laundered through international trade, with the result that the owner, source, and illicit nature of the drug proceeds are concealed and the Mexico or Colombia-based drug dealers ultimately receive their profits in their native currency, pesos.

3. The conspiracy charged herein involved picking up drug proceeds in the form of United States currency from cities in the United States and transporting the drug proceeds by various means to Laredo, Texas. Once in Laredo, the drug proceeds were laundered through commodities businesses, including perfume sellers, using the BMPE.

4. More specifically, the drug proceeds collected in the United States, in the form of United States currency, were "sold," or assigned, by certain Conspirators to Mexican businesses located in Mexico for their use, who in turn directed the proceeds to be delivered and paid on their behalf to businesses inside the United States for the purchase of goods and merchandise. The Mexican businesses that received the goods and merchandise purchased with the drug proceeds then paid for the drug proceeds by transferring the corresponding amount of Mexican pesos to certain of the Conspirators.

*Defendants*

5. Defendants                                                                                    , and                                                                were based in Mexico and directed money couriers to collect drug proceeds in numerous United States cities and then transfer the drug proceeds by wire or courier to Laredo, Texas, to be laundered through Laredo businesses.

6. Defendant                    operated in both the United States and Mexico, and arranged for the delivery of drug proceeds by wire or courier to Laredo, Texas, to be laundered through Laredo businesses.

7. Defendant                    purchased drug proceeds from Defendant          and other Conspirators on behalf of Mexican businesses to pay Laredo businesses for merchandise.

8. Defendants                                           **Luis Montes-Patino** (hereinafter "**Montes**") were money couriers who picked up drug proceeds from different United States cities and transported the proceeds to Laredo, Texas, to be laundered through Laredo businesses.

9. Defendant                    owned a freight forwarding business called                Defendants                          were employees of          Defendants                    transferred drug proceeds on behalf of various Conspirators, and shipped merchandise purchased by Mexican businesses from Laredo businesses as part of the conspiracy.

10. Defendant                    operated a Mexican perfume business and purchased drug proceeds from Defendant          and other Conspirators to pay Laredo businesses for merchandise purchased by Defendant

11. Defendant **Ravinder Reddy Gudipati** (hereinafter "**Gudipati**") was the owner of and sole registered agent for NYSA Impex LLC (hereinafter "NYSA"), a perfume business in Laredo, Texas, and received drug proceeds as payment for merchandise sold to Mexican businesses.

3

12.  Defendant                     was the President and sole shareholder of                        a perfume business in Laredo, Texas. Defendant operated El Reino with Defendant           . Defendants        and          received drug proceeds as payment for merchandise sold to Mexican businesses.

13.  Defendant                              (hereinafter         ) was the sole owner and President of                     a perfume business in Laredo, Texas, and received drug proceeds as payment for merchandise sold to Mexican businesses.

## COUNT ONE
### [18 U.S.C. § 1956(h): Money Laundering Conspiracy]

*Objects of the Conspiracy*

14.  Beginning in or about October 2011 and continuing through in or about October 2013, the exact dates being unknown to the Grand Jury, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, the Defendants,

**LUIS MONTES-PATINO,**

**RAVINDER REDDY GUDIPATI,**

together with others both known and unknown to the Grand Jury, did knowingly conspire and agree together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses:

(a) Conducting and attempting to conduct financial transactions involving monetary instruments affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) Conducting and attempting to conduct financial transactions involving monetary instruments affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and that the transactions were designed in whole and in part to avoid a transaction reporting requirement under federal law, in violation of Title 18, United States Code Section 1956(a)(1)(B)(ii).

*Manner and Means of the Conspiracy*

15.   In the course of the conspiracy, Defendants          and          directed money couriers, including Defendants ⁻          **Montes**, to travel to certain locations, often outside of Texas, to pick up drug proceeds. As directed, the money couriers, including Defendants **Montes**, would physically transport the drug proceeds to Laredo, Texas, where the drug

proceeds were delivered to a person whom the Conspirators did not know was a Confidential Source (hereinafter "the CS") working on behalf of the Drug Enforcement Administration (hereinafter the "DEA"). Once the drug proceeds arrived in Laredo, the CS, at the direction of Defendants         and other Conspirators acting on behalf of the Mexican businesses that purchased the drug proceeds, would deliver portions of the drug proceeds to Laredo businesses for the purchase of merchandise. The Laredo businesses receiving drug proceeds included those owned and operated by Defendants **Gudipati**,         and         and         . In some instances, a portion of the drug proceeds was also delivered to a freight-forwarding warehouse operated by Defendant         .

16. On other occasions during the course of the conspiracy, Defendant         directed money couriers to pick up drug proceeds from various locations, but instead of physically transporting the proceeds to Laredo, Defendants         instructed other Conspirators to deposit some or all of the proceeds into a bank account at a United States financial institution. Once the drug proceeds were deposited into the bank account, Defendants         and other Conspirators acting on behalf of the Mexican businesses that purchased the proceeds, directed portions of the drug proceeds to be delivered, either by wire transfer or courier, to Laredo businesses for the purchase of merchandise. At other times, a portion of the drug proceeds was also delivered to the Transportes Velasquez warehouse.

17. After the Laredo businesses received the drug proceeds as payment for merchandise, Defendants         arranged for the transportation of the merchandise to the Mexican businesses that had purchased it.

18. Mexican businesses paid Defendants         and other Conspirators for the drug proceeds with Mexican pesos.

6

19. As an example, on or about July 27, 2012, Defendant           directed the CS to pick up approximately $200,000 in drug proceeds in Louisville, Kentucky. As instructed, on or about August 2, 2012, two undercover agents posing as money couriers picked up $214,520 of drug proceeds in Louisville, Kentucky. On or about August 6, 2012, the CS, at the direction of Defendant           delivered $40,860 of the drug proceeds to Defendant           and $30,000 of the drug proceeds to Defendant **Gudipati** at NYSA. Both payments were for merchandise purchased by Defendant           On or about the same day, at the direction of Defendant           the CS also delivered $41,000 to the           warehouse.

20. As an additional example, between on or about September 12, 2013, and on or about September 18, 2013, Defendant           directed an undercover agent posing as a money courier to pick up approximately $80,000 in drug proceeds in Lexington, Kentucky. On or about September 17, 2013, as directed by Defendant          , an undercover agent picked up $80,060 of drug proceeds in Lexington, Kentucky, which was then deposited into a bank account at a United States financial institution. On or about September 16, 2013, through on or about September 18, 2013, Defendant           instructed an undercover agent posing as a money courier to deliver approximately $2,000 of the drug proceeds previously deposited into the bank account to Defendant           at the           warehouse, which the CS did on or about September 19, 2013. On or about October 16, 2013, a Mexican business owner instructed the CS to deliver approximately $19,900 of the drug proceeds previously deposited into the bank account to Defendant **Gudipati** at NYSA as payment for merchandise, which the CS did on or about the same day.

**COUNT TWO**
[18 U.S.C. § 1960(a) & (b)(1)(A)(B) & (C):
**Conducting an Unlicensed Money Transmitting Business**]

21. Beginning in or about October 2011, and continuing through in or about October 2013, the exact dates being unknown to the Grand Jury, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendants,

did unlawfully and knowingly conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting business affecting interstate and foreign commerce, to wit, a business that (a) operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor and a felony under State law, (b) failed to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330 and regulations prescribed under such section, and (c) involved the transportation and transmission of funds that were known to the defendants to have been derived from a criminal offense, in violation of Title 18, United States Code, Sections 1960(a) and (b)(1)(A), (B), and (C), and Title 18, United States Code, Section 2.

## COUNT THREE
[18 U.S.C. § 1956(a)(1)(B)(i) & (ii): Money Laundering]

22. On or about August 6, 2012, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendants,

**RAVINDER REDDY GUDIPATI,**

together with others both known and unknown to the Grand Jury, knowingly conducted and attempted to conduct a financial transaction involving approximately $30,000 in United States currency delivered to and received by Defendant **Gudipati** at NYSA that affected interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under State and Federal law, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) & (ii), and Title 18, United States Code, Section 2.

## COUNT FOUR
[18 U.S.C. §1956(a)(1)(B)(i) & (ii): Money Laundering]

23.     On or about August 6, 2012, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendants,

together with others both known and unknown to the Grand Jury, knowingly conducted and attempted to conduct a financial transaction involving approximately $40,860 in United States currency delivered to and received by Defendants          and          at          that affected interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under State and Federal law, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) & (ii) and Title 18, United States Code, Section 2.

## COUNT FIVE
### [18 U.S.C. §1956(a)(1)(B)(i): Money Laundering]

24.   On or about September 17, 2013, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendants,

together with and others both known and unknown to the Grand Jury, knowingly conducted and attempted to conduct a financial transaction involving approximately $80,060 in United States

currency that, at the direction of Defendant        , was given to and received by a law enforcement agent acting in an undercover capacity as a money courier, and that affected interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Title 18, United States Code, Section 2.

## COUNT SIX
### [18 U.S.C. §1956(a)(3)(B) & (C): Money Laundering]

25. On or about October 16, 2013, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendant,

**RAVINDER REDDY GUDIPATI,**

knowingly conducted and attempted to conduct a financial transaction involving approximately $19,900 in United States currency delivered to and received by Defendant **Gudipati** at NYSA that affected interstate and foreign commerce, which transaction involved property represented by someone at the direction and with the approval of a Federal official authorized to investigate and prosecute violations of this section, to be the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, with the intent to conceal and disguise the nature, location, source, ownership, and control of the property believed to be proceeds of said specified unlawful activity, and with the intent to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(3)(B) & (C).

## COUNTS SEVEN THROUGH NINE
[18 U.S.C. §1956(a)(3)(B) & (C): Money Laundering]

26. On or about the dates below and involving the corresponding amounts of United States currency below, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendant,

knowingly conducted and attempted to conduct financial transactions involving United States currency delivered to and received by Defendant that affected interstate and foreign commerce, which transactions involved property represented by someone at the direction and with the approval of a Federal official authorized to investigate and prosecute violations of this section to be the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of said specified unlawful activity, and with the intent to avoid transaction reporting requirements under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(3)(B) & (C):

| COUNT | TRANSACTION DATE | AMOUNT OF CASH |
|---|---|---|
| 7 | November 27, 2012 | $50,000 |
| 8 | November 30, 2012 | $12,285 |
| 9 | June 10, 2013 | $5,000 |

## COUNT TEN
[18 U.S.C. §1956(a)(3)(B) & (C): Money Laundering]

27.     On or about May 8, 2013, within the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendant,

knowingly conducted and attempted to conduct a financial transaction involving approximately $52,000 in United States currency delivered to and received by Defendant                 at             that affected interstate and foreign commerce, which transaction involved property represented by someone at the direction and with the approval of a Federal official authorized to investigate and prosecute violations of this section to be the proceeds of specified unlawful activity, that is, Title 21, United States Code, Sections 841 and 846, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of said specified unlawful activity, and with the intent to avoid a transaction reporting requirement under State and Federal law, in violation of Title 18, United States Code, Section 1956(a)(3)(B) & (C).

## COUNTS ELEVEN AND TWELVE
[31 U.S.C. §5324(b)(2): Causing a Trade or Business to File a Form 8300 Containing a Material Omission and Misstatement of Facts]

28.     Title 31, United States Code, Section 5331, and the regulations promulgated thereunder, require any person (including a corporation) engaged in a trade and business, who, in the course of such trade and business, receives more than ten thousand dollars ($10,000) in coins and currency in one (1) transaction or two (2) or more related transactions, to file a report with respect to such transaction(s) with the Financial Crimes Enforcement Network (FinCEN), Department of the Treasury. This report is commonly referred to as a "Form 8300."

29. During all times relevant to the Indictment, Mav Trading operated in Laredo, Texas, as a trade and business selling perfume.

30. On or about the dates below, each date which corresponds to a payment in United States currency that triggered the reporting requirement under Section 5331 of Title 31, United States Code, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendant,

knowingly and for the purpose of evading the reporting requirements of Section 5331 of Title 31, United States Code, and the regulations promulgated thereunder, did cause and attempt to cause

a trade and business as defined in Title 31, Code of Federal Regulations, Section 103.30(c)(11) (recodified without substantive change as Title 31, Code of Federal Regulations, Section 1010.330(c)(11), effective March 1, 2011), that is a wholesale and retail seller of perfumes and other products, to file reports containing a material omission and misstatement of facts required under Section 5331 of Title 31 and any regulation prescribed under any such section, all in violation of Title 31, United States Code, Section 5324(b)(2) and Title 31, Code of Federal Regulations, Section 103.30 (recodified without substantive change as Title 31, Code of Federal Regulations, Section 1010.330, effective March 1, 2011):

| COUNT | DATE OF CASH RECEIPT | AMOUNT OF CASH |
|---|---|---|
| 11 | November 27, 2012 | $50,000 |
| 12 | November 30, 2012 | $12,285 |

## COUNTS THIRTEEN AND FOURTEEN
**[31 U.S.C. §5324(b)(1): Causing a Trade or Business to Fail to File a Form 8300]**

31. During all times relevant to the Indictment, NYSA operated in Laredo, Texas, as a trade and business selling perfume.

32. On or about the dates below, each date which corresponds to a payment in United States currency that triggered the reporting requirement under Section 5331 of Title 31, United States Code, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendant,

**RAVINDER REDDY GUDIPATI,**

knowingly and for the purpose of evading the reporting requirements of Section 5331 of Title 31, United States Code, and the regulations promulgated thereunder, did cause and attempt to cause NYSA, a trade and business as defined in Title 31, Code of Federal Regulations, Section 103.30(c)(11) (recodified without substantive change as Title 31, Code of Federal Regulations, Section 1010.330(c)(11), effective March 1, 2011), that is a wholesale and retail seller of perfumes and other products, to fail to file reports required under Section 5331 of Title 31 and any regulation prescribed under any such section, all in violation of Title 31, United States Code, Sections 5324(b)(1) and Title 31, Code of Federal Regulations, Section 103.30 (recodified without substantive change as Title 31, Code of Federal Regulations, Section 1010.330, effective March 1, 2011):

| COUNT | DATE OF CASH RECEIPT | AMOUNT OF CASH |
|---|---|---|
| 13 | August 6, 2012 | $30,000 |
| 14 | October 16, 2013 | $19,900 |

## COUNT FIFTEEN
### [31 U.S.C. §5324(b)(2): Causing a Trade or Business to File a Form 8300 Containing a Material Omission and Misstatement of Facts]

33. During all times relevant to the Indictment, NYSA operated in Laredo, Texas, as a trade and business selling perfume.

34. On or about November 27, 2012, a date which corresponds to a payment of approximately $50,000 in United States currency that triggered the reporting requirement under Section 5331 of Title 31, United States Code, in the Southern District of Texas and elsewhere, and within the jurisdiction of this Court, Defendant,

### RAVINDER REDDY GUDIPATI,

knowingly and for the purpose of evading the reporting requirements of Section 5331 of Title 31, United States Code, and the regulations promulgated thereunder, did cause and attempt to cause NYSA, a trade and business as defined in Title 31, Code of Federal Regulations, Section 103.30(c)(11) (recodified without substantive change as Title 31, Code of Federal Regulations, Section 1010.330(c)(11), effective March 1, 2011), that is a wholesale and retail seller of perfumes and other products, to file a report containing a material omission and misstatement of facts required under Section 5331 of Title 31 and any regulation prescribed under any such section, all in violation of Title 31, United States Code, Section 5324(b)(2) and Title 31, Code of Federal Regulations, Section 103.30 (recodified without substantive change as Title 31, Code of Federal Regulations, Section 1010.330, effective March 1, 2011).

## FORFEITURE ALLEGATION
### Notice of Criminal Forfeiture

1. Pursuant to Title 18, United States Code, Section, 982(a)(1), the United States gives notice to the Defendants charged in **Counts One through Ten** of this Indictment, that upon

conviction of any of these offenses, all property, real or personal, involved in such offenses, and all property traceable to such property, is subject to forfeiture.

### Notice of Criminal Forfeiture

2. Pursuant to Title 31, United States Code, Section 5317(c), the United States gives notice to the Defendants charged in **Counts Eleven through Fifteen** of this Indictment, that upon conviction of any of these offenses, all property, real or personal, involved in a transaction in violation of such offenses, or any property traceable to such property, is subject to forfeiture.

### Substitute Assets

3. The Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of the Defendants,

    (i) cannot be located upon the exercise of due diligence;

    (ii) has been transferred or sold to, or deposited with, a third party;

    (iii) has been placed beyond the jurisdiction of the court;

    (iv) has been substantially diminished in value; or

    (v) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the Defendants up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

**ORIGINAL SIGNATURE ON FILE**

FOREPERSON OF THE GRAND JURY

Abe Martinez
Acting United States Attorney

By: _____
José Angel Moreno
Assistant United States Attorney

Deborah Connor, Acting Chief
Money Laundering and Asset
  Recovery Section
Criminal Division
U.S. Department of Justice

_____
Keith Liddle
Trial Attorney
Money Laundering and Asset
  Recovery Section
Criminal Division
U.S. Department of Justice

_____
Vesna Harasić-Yaksic
Trial Attorney
Money Laundering and Asset
  Recovery Section
Criminal Division
U.S. Department of Justice

USA-74-24b
(Rev. 6-1-71)

LAREDO DIVISION
FILE: 11-26560   MAG#:
INDICTMENT

CRIMINAL DOCKET NO. **L-17-560**

Filed: July 17, 2017         Judge: _____

ATTORNEYS:

UNITED STATES OF AMERICA

VS.

ABE MARTINEZ, ACTING USA
JOSÉ ANGEL MORENO, AUSA

LUIS MONTES-PATINO,

RAVINDER REDDY GUDIPATI,

**CHARGE:**   COUNT 1 – MONEY LAUNDERING CONSPIRACY, 18 USC 1956(h), 1956(a)(1)(B)(i) and (ii)

COUNT 2 – OPERATION OF AN UNLICENSED MONEY TRANSMITTING BUSINESS, 18 USC 1960(b)(1)(A), (B), and (C), and 18 USC 2

COUNT 3 & 4 – MONEY LAUNDERING, 18 USC 1956(a)(1)(B)(i) and (ii), and 18 USC 2

COUNT 5 – MONEY LAUNDERING, 18 USC 1956(a)(1)(B)(i), and 18 USC 2

COUNT 6 through 10 – MONEY LAUNDERING, 18 USC 1956(a)(3)(B) and (C)

COUNT 11-12 & 15 – STRUCTURING (NONFINANCIAL TRADE OR BUSINESS), 31 USC 5324(b)(2)

COUNT 13 & 14 – STRUCTURING (NONFINANCIAL TRADE OR BUSINESS), 31 USC 5324(b)(1)

FORFEITURE ALLEGATION

**TOTAL COUNTS: 15**

**PENALTY:**   Cts. 1, 3-10:   20 Years and/or $500,000 or twice the value of the monetary instrument involved in the offense, whichever is greater, $100 Special Assessment, Not More Than 3 Years Term of Supervised Release

Cts. 2, 11-15:   5 Years and/or $250,000, $100 Special Assessment, Not More Than 3 Years Term of Supervised Release

In Jail:

On Bond:

Name & Address of Surety:

No Arrest: