UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL |
| | ) | |
| Plaintiff, | ) | Laredo, Texas |
| | ) | Wednesday, January 15, 2020 |
| vs. | ) | (8:01 a.m. to 8:32 a.m.) |
| | ) | |
| LUIS MONTES-PATINO, | ) | CASE NO: 5:17-CR-00560-6 |
| | ) | |
| Defendant. | ) | |

STATUS CONFERENCE / SENTENCING (IN ABSTENCIA)

BEFORE THE HONORABLE MARINA GARCIA MARMOLEJO,
UNITED STATES DISTRICT JUDGE

Appearances:              See next page

Case Managers:            Angie Trevino / Erica Lopez

Court Recorder [ECRO]:    Edgar Hernandez

Deputy U.S. Marshal:      Bobbie Molina

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiff:                    JOSE ANGEL MORENO, ESQ.
                              Assistant United States Attorney
                              P.O. Box 1179
                              Laredo, Texas 78042-1179


Defendant:                    ROBERTO BALLI, ESQ.
                              P.O. Box 1058
                              Laredo, Texas 78042


U.S. Probation:               Gary Weiss / Laura Cruz
                              1300 Victoria, Suite 2111
                              Laredo, Texas 78040

3

1      **Laredo, Texas; Wednesday, January 15, 2020; 8:01 a.m.**

2                          **Call to Order**

3          **THE COURT:**  We are calling Cause Number L:17-0560,

4  it's Defendant Number 6 and we have a Status Conference for

5  both husband and wife it should be, it's not noted on the

6  Docket, but it should be for Luis Montes Patino and also the

7  other -- who was his wife?

8          **MR. BALLI:**  Adriana Galvan-Constantini.

9          **THE CLERK:**  She's at 10:00 o'clock, Judge.

10         **THE COURT:**  Oh, she's at 10:00 o'clock.

11         **THE CLERK:**  That was the only early -- he's a trial.

12         **THE COURT:**  Oh, that's right.  That's right, that's

13  the reason you're here earlier.  Okay.

14         **MR. BALLI:**  Yes.

15         **THE COURT:**  All right, so, Mr. Balli, you represented

16  or represent Luis Montes Patino.  Can you give me a status of

17  what we know?

18         **MR. BALLI:**  Your Honor, yesterday my staff made a

19  phone call to Mr. Montes Patino's phone number and the phone

20  was operable.  They left a voice mail message that the case was

21  set for today and that's our last contact with, you know, the

22  last time we made contact or attempted contact was everything

23  was put on the record before -- last time we were here we

24  attempted to make contact with him.  And so we had notice of

25  this setting I guess on Monday of this week, and so we

1    attempted to make contact with him yesterday, left even a voice

2    message and -- but we received no phone call in return and I

3    have not seen Mr. Montes Patino this morning.

4         **THE COURT:**  Okay, and, again, it's been now many

5    months since our last setting and since he was notified of this

6    previous scheduled sentencing, and he's made no contact with

7    you or any member of your staff since then?

8         **MR. BALLI:**  No, your Honor.

9         **THE COURT:**  Okay.  All right, so, Government, let's

10   go through some more procedural history that show what attempts

11   we have made to try to locate Mr. Patino.

12        **MR. MORENO:**  Well, I think, your Honor, there were a

13   number of attempts made to locate him before our last hearing

14   back in June.  And our last information is that they were still

15   -- they were seen, there were -- we had some location

16   information where we have been trying to locate them in Mexico.

17   To our last check there have been no entries into the country

18   or (indisc.) there has been no phone contact.  None of the

19   Defendants or co-Defendants have had any contact with them or

20   have (indisc.) with either one of them.  I believe the Marshals

21   haven't been able to get any further information other than

22   that, your Honor, they have just basically disappeared before

23   they were first set for sentencing.

24        **THE COURT:**  Okay, so, again, no question they were

25   given notice of the first setting; no question that they

1   absconded.

2           Let me hear from both the Marshals and Pretrial if

3   you-all want to add anything to what we're talking about here,

4   so if you'll come up, tell us your name for the record?

5           Yes.

6           **PRETRIAL SERVICES OFFICER CRUZ:**  Good morning, your

7   Honor.

8           **THE COURT:**  Yes, good morning.

9           **PRETRIAL SERVICES OFFICER CRUZ:**  Laura Cruz for

10  Probation.

11          **UNITED STATES MARSHAL PEREZ:**  Good morning, your

12  Honor.  Beatriz Perez for the US Marshals.

13          **UNITED STATES MARSHAL HINOJOSA:**  Good morning, your

14  Honor.  Deputy Abel Hinojosa with the US Marshals.

15          **THE COURT:**  Okay, thank you, everyone.

16          Yes, go ahead, Ms. Cruz.

17          **PRETRIAL SERVICES OFFICER CRUZ:**  As far as attempts,

18  your Honor, just as Mr. Balli said, yesterday I attempted to --

19  I placed phone calls to the Defendants' last known telephone

20  contact.  It did ring, the phone was ringing; however, it would

21  go to voice mail, so I left a message and there was no

22  response.

23          This morning I did the same, it was ringing, and left

24  a voice message as well, your Honor.

25          **THE COURT:**  Okay.  Now they were residing, Mr. Patino

1    and his wife, who is a co-Defendant in the case, were residing

2    in Dallas and they were directly being supervised out of

3    Dallas, but you maintained contact with the Dallas Division --

4          **PRETRIAL SERVICES OFFICER CRUZ:**  Yes, your Honor.

5          **THE COURT:**  And back in May of 2019 is when we first

6    learned that the battery was low on the GPS device; that they

7    were supposed to be traveling into Laredo to meet with

8    Mr. Balli; that they were obviously told that they had a

9    setting and never came in.

10         Have you, for the Dallas Division, had any contact

11   with them since then?

12         **PRETRIAL SERVICES OFFICER CRUZ:**  No, your Honor.

13   After this Petition was submitted, that was the last

14   information that we received.

15         **THE COURT:**  And you're referring to the Petition for

16   Action on conditions of Pretrial release?

17         **PRETRIAL SERVICES OFFICER CRUZ:**  Yes, your Honor.

18         **THE COURT:**  Okay.  All right, very well.

19         Marshals?

20         **UNITED STATES MARSHAL PEREZ:**  Yes, your Honor.  As

21   Mr. Moreno mentioned we, the US Marshals, made an attempt, our

22   Dallas Division, we sent a lead and they made an attempt on

23   June 26.  They met with the Defendants Luis Montes Patino's

24   brother-in-law and sister-in-law in Dallas and the brother-in-

25   law named Daniel Constantini stated that he had not seen the

7

1   Defendants in two weeks from the date of the visit and that he

2   believed that they're in San Luis Potosi, Mexico.

3           Since then, your Honor, we ran crossings and -- may I

4   approach or --

5           **THE COURT:**  Well, no, I mean, there is nobody here so

6   we -- if there's something that you think would jeopardize an

7   ongoing investigation then don't state it on the record at this

8   time.

9           **UNITED STATES MARSHAL PEREZ:**  Okay.  So the last --

10          **THE COURT:**  But the point of this is that we have

11  made attempts to locate them, that we're satisfied that they're

12  no longer in the United States of America; that they're

13  fugitives in another country, is that your belief?

14          **UNITED STATES MARSHAL PEREZ:**  Yes, your Honor.  And I

15  further believe that the co-surety for Ms. Constantini has

16  perhaps more information because he was interviewed also in

17  Dallas, and we're going to entertain that again and make

18  another attempt to visit him in Dallas.

19          **THE COURT:**  Okay.  And --

20          **UNITED STATES MARSHAL PEREZ:**  Okay.

21          **UNITED STATES MARSHAL HINOJOSA:**  And, your Honor, the

22  reason I'm here is because the wife, Deputy Perez has the case

23  for the husband and I have the case for the wife.  And the

24  information that we have sent to Dallas it mirrors the same

25  case because they're both together and we determined that --

1  your Honor said, we determined that they are in Mexico and --

2      **THE COURT:** Don't intend to return to the US to be

3  sentenced?

4      **UNITED STATES MARSHAL HINOJOSA:** Yes.  And most of

5  the family members keep saying the same thing, they have no

6  idea where they're at.

7      **THE COURT:** Which is not believable, but -- all

8  right.  Any other information?  No?

9      **PRETRIAL SERVICES OFFICER CRUZ:** No, your Honor.

10      **UNITED STATES MARSHAL HINOJOSA:** No, your Honor.

11      **THE COURT:** Okay.  Mr. Balli, Mr. Moreno, do you want

12  to inquire further of any of these individuals?

13      **MR. MORENO:** Not from the Government.

14      **MR. BALLI:** No, your Honor.

15      **THE COURT:** All right, thank you.

16      All right, so, Mr. Moreno, you filed a Motion on

17  behalf of the Government asking that this case, specifically as

18  to both of these Defendants, Mr. Patino and Ms. Constantini, be

19  separate Status Conference/Sentencing hearing.

20      Are you asking that the Court go forward with a

21  sentencing hearing in absentia for Mr. Patino and

22  Ms. Constantini?

23      **MR. MORENO:** Yes, your Honor.  If we can go back for

24  just a second, the case was originally set and they failed to

25  appear.  Judge Alvarez, at the request of Defense counsel,

1    allowed them time to be able to try to communicate with their

2    counsel and file any objections they might have and then reset

3    the case, and then it went back to this court.

4          She also wanted them to have an opportunity to

5    discuss the case with the court, and we had another Status

6    Conference in June of last year where, again, it was reported

7    they made no contact with them.

8          Other than the original filings for the objections on

9    the PSRs and everyone's responses and replies they have made no

10    further Motions.

11          In addition to all of this it's really, you know,

12    hampering our efforts to deal with, to complete an extradition

13    package for them because there is no final conclusion to the

14    case because there is no judgment on them, and so we can't

15    really proceed with that without doing so.

16          I don't think there is anything else that's pending

17    other than the sentencing, and given that they have sentenced

18    themselves voluntarily then the Court should be able to

19    sentence them at this moment in absentia.

20          **THE COURT:**  Right, and I think that that's accurate

21    because they were given notice, they were given an opportunity

22    to show up, they have now had more than six -- well, actually

23    more than eight months to make contact with their lawyers and

24    to come into court and have not done so, so based on what we

25    know right now they are fugitives and, you know, believed to be

1   in Mexico, and appropriate at this point for the Court to go

2   forward with their sentencing in absentia because, again, they

3   voluntarily absented themselves from these proceedings.

4         All right, so, Mr. Balli, let's -- if you-all just

5   want to come up to the microphones, you filed Objections,

6   Mr. Moreno filed Replies to all of the Objections.  We can just

7   go through all of these.

8         **PROBATION OFFICER WEISS:**  Your Honor, I'm sorry --

9         **THE COURT:**  Oh, yes.

10        **PROBATION OFFICER WEISS:**  Gary Weiss from Probation.

11        I just wanted to advise the Court that the PSR was

12   last revised on July 23rd following the sentences from May just

13   to update the Defendant's Pretrial adjustment, as well as to

14   give the initial enhancement for obstruction as they did not

15   show, so it did impact their -- this Defendant's offense level

16   computation as well as his sentencing options.

17        **THE COURT:**  Okay, very well.

18        And this is a zero to 20-year case, and let's just

19   begin with the Base Offense Level.  It's currently scored at a

20   26, Mr. Balli, then there's a plus 6 because the funds were

21   believed to be proceeds of an offense involving the

22   distribution of a controlled substance; a plus 2 because it's a

23   violation of 18 USC 1956(h); a plus 2 if it involved

24   sophisticated laundering; a plus 2 for obstruction of justice

25   because the Defendant absconded and failed to appear at

1   sentencing that was previously noticed out for May of 2019 and,

2   of course, no acceptance because they were convicted by a jury

3   trial.  And so that's a Level 38, Category II.  It's a range

4   that is higher than a maximum statutory penalty, it is 262 to

5   327.

6          Mr. Balli, I'll let you just go through the

7   objections one by one.  I have read them all in detail, I don't

8   know that -- you know, we can just kind of take them one by

9   one, you don't have to really argue all of them because you did

10  so in writing and I carefully reviewed them, but let's just go

11  through them.

12         **MR. BALLI:**  Your Honor, I just want to begin again by

13  renewing the objection to sentencing Mr. Montes Patino in

14  absentia.  I believe even though the case law is against me --

15  well, I think all of the case law would be against me based on

16  the Court's finding, but I think under the Sixth Amendment he

17  has a right to be present before the Court for his sentencing.

18  And the evidence presented earlier is insufficient to show that

19  he voluntarily absented himself from the proceedings.  We

20  simply don't know what happened to him, Judge, and so I renew

21  my objection and make that factual objection which you knew

22  with the new information that we have today, Judge.

23         **THE COURT:**  And, again, I understand that you're

24  doing your job as his lawyer, but he was invited to come in,

25  his wife was invited to come in.  They were residing in Dallas.

 1    They vacated the premises, they cut off their GPS device.  They

 2    have been given every invitation and opportunity to communicate

 3    with you or family members to notify you if something, for

 4    example, had happened.  If they had been in an accident and

 5    were in a hospital with some type of amnesia family members

 6    could have filled us in as to reasons like that, but we don't

 7    have any information to indicate that there is anything like

 8    that.  All of the information at this point indicates that they

 9    were aware of the proceedings and voluntarily absented

10    themselves.  But I understand for the record your objection

11    will be noted and --

12         MR. BALLI:  And all of those same arguments, Judge,

13    I'm making for the obstruction based on the facts presented

14    that there is insufficient evidence of the two-level upward

15    adjustment for obstruction, Judge.

16         THE COURT:  Okay, very well.  And, again, I'd also

17    rule, just let me -- I'll go ahead and rule on that; that will

18    also be noted and overruled.  There is some ample evidence that

19    they failed to appear voluntarily and that is classic

20    obstruction of justice.  All right.

21         MR. BALLI:  And, your Honor, the other objection is,

22    you know, originally our PSR had a different score of 22 and

23    that was based on the fact that on the amount of money

24    laundering, the original PSR was properly calculated with the

25    Base Offense Level of --

1          **MR. MORENO:**  It's a million 187,944.

2          **MR. BALLI:**  That was the amount of currency and that

3    gave us a Level 22, I believe, let me -- a Level 22, Judge, and

4    so that was the proper amount of currency.

5          The PSR is reflective to some degree of what the

6    evidence at trial.  However, there is insufficient evidence

7    that the amount added up to 5 million 479,024, which is the

8    amount that the PSR now says that Mr. Montes Patino is

9    accountable for, is part of reasonably foreseeable acts of

10   jointly undertaken criminal activity.  Mr. Montes Patino and

11   his wife, they worked -- you know, the evidence at trial showed

12   that they had specific amounts of currency.

13         Ms. Galvan-Constantini was -- there was a seizure

14   related to her.  There was another seizure related to

15   Mr. Montes Patino.  Those amounts were about $750,000, 800,000,

16   and so it doesn't come anywhere near this 5 million 479,000.

17         And although I think there was evidence that

18   Ms. Galvan-Constantini was -- knew about other activities that

19   were going on, the same cannot be said for Mr. Montes Patino

20   and even with the knowledge that Ms. Galvan-Constantini had it,

21   it didn't -- the evidence didn't show that she -- it was part

22   of jointly undertaken activity, just it was just information

23   that she had, Judge, and so we would object to the Level 26 and

24   ask that the Court score the original Level 22 Base Offense

25   Level.

14

1          **THE COURT:**  Okay.  Government response?

2          **MR. MORENO:**  As we detailed in our response there was

3   a number of exhibits that were introduced, I think I included

4   them in my response, they are Government Exhibits or Trial

5   Exhibits 10, 11 and 12 which were the ledgers that were

6   introduced into evidence with the payments that were made or

7   received by the confidential source.  She testified to those

8   and explained them, and testified that she met with both

9   Defendants on a number of occasions both here in Laredo and San

10  Antonio, and I believe she said once in Houston.  And those

11  notations are also in those same ledgers.

12          When the Defendant testified he didn't deny it; in

13  fact, he admitted a couple of those encounters and coming down

14  to them.  Their defense, if the Court will recall, was that

15  they were basically out of statute of limitations with regards

16  to the offense, not that they didn't commit the offense or that

17  they weren't involved in any of these transactions.

18          Obviously the jury verdict supported the Government's

19  theory of the case and the testimony of the source in this

20  case, and so the amounts that are listed there are strictly

21  amounts that are accumulated from the testimony and from those

22  ledgers, your Honor, and so I believe that that amount should

23  be correct.

24          **THE COURT:**  Okay, and I think the Defense also cited

25  *US versus Harper* which is 448 F3d 732, Fifth Circuit 2007 case

1   saying that proof by a preponderance of the evidence is not

2   exactly the appropriate standard, that it should be a higher

3   standard than just regular preponderance of the evidence

4   because of the large effect on Defendant's sentencing exposure,

5   and your belief is that to go from a Level 22 to 26 doesn't

6   implicate the protections of Harper?

7           MR. MORENO:  I wouldn't think so, your Honor.  I

8   think the verdict was determined on proof beyond a reasonable

9   doubt, not on a preponderance of the evidence, and this was all

10  evidence that the jury heard and listened to and saw in the

11  exhibits, and so I don't think that's implicated in this

12  particular instance, your Honor.

13          THE COURT:  I think the Defense also said that the

14  jury verdict, however, is not determinative of the reliability

15  of particular exhibits.  But when we look at 10, 11, 12, and

16  the argument that the notebooks were unreliable because of the

17  simple fact that the C.S. had them and kept them before she

18  eventually turned them over to agents, we don't only have that,

19  we have her testifying, we have Mr. Patino himself

20  testifying --

21          MR. MORENO:  Correct.

22          THE COURT:  -- and the jury was entitled to evaluate

23  the testimony in addition to the notebooks and make the

24  determination as to guilt or innocence as to all of the

25  Defendants.

1          **MR. MORENO:**  Correct, Judge.

2          **THE COURT:**  Okay.  All right, so --

3          **MR. BALLI:**  And, Judge, I would add that --

4          **THE COURT:**  Yes, sir.

5          **MR. BALLI:**  -- there is no interrogatory to the jury

6    about specific -- specific amounts of currency --

7          **THE COURT:**  Why would that have been necessary?

8          **MR. BALLI:**  Well, I mean, just related, related to

9    Mr. Moreno's argument that the jury found them guilty based on

10   the evidence that was there.  We -- that doesn't mean that the

11   jury would agree with this 5 million dollar amount.

12         **THE COURT:**  Well, but they don't have to.  It's just

13   that the money amounts are sentencing issues --

14         **MR. BALLI:**  Yes, Judge.

15         **THE COURT:**  -- and so apparently it's not implicated,

16   they're just sentencing issues so that would not have been a

17   special finding for the jury.  I think the point here is that

18   the jury was able to evaluate all of the evidence, obviously

19   found it to be reliable because they returned a verdict of

20   guilty beyond a reasonable doubt, and so from that can the

21   Court extrapolate that they believe that Mr. Patino was

22   involved in this conspiracy to launder monetary instruments?

23         Yes, absolutely.

24         Then the question which Defense has an issue is what

25   evidence do we have as to the particular amounts, and so I want

1    to make sure that we separate those and I think, you know, to

2    say "Well, the notebooks are unreliable because the C.S. had

3    them secretly for some time before she turned them over to the

4    Government" I don't that carries the day.  I heard the

5    testimony myself and the jury believed the C.S. was credible,

6    and I found her to be credible, and I think that there was

7    sufficient evidence to back up these amounts, so the objection

8    is noted and overruled, it will be a Level 26.

9              Next objection?

10         **MR. BALLI:**  Your Honor, just with regard to the rest

11   of the objections, we'd just, you know, present to the Court

12   what we have already submitted and ask the Court to consider

13   that and rule on that, Judge.

14         **THE COURT:**  Okay, very well.  And, again, each of you

15   filed very detailed objections, cited appropriate case law.  I

16   have reviewed them all and the rest of the objections are

17   overruled.

18              So, Mr. Patino is a 262 to 327 with a cap of 240.

19              Mr. Balli, do you want to make any other arguments on

20   his behalf?

21         **MR. BALLI:**  Yes, your Honor.  You know, we'd like the

22   Court to consider several things about Mr. Montes Patino.

23              Mr. Montes Patino was in the United States for -- he

24   immigrated here in 1995 so, you know, we're talking about 25

25   years in the United States.  He came as a lawful permanent

1    resident, established a business in the Dallas area, was

2    working in the insurance and in bus -- passenger bus

3    administration management.  He did that.

4            You know, I think the evidence at trial would show

5    that from, you know, May 2010-2012 is when there was different

6    incidents related to money laundering.  However, after that

7    there was nothing and so he returned to his life of work after

8    that and continued working in bus management, helping his wife

9    with her insurance company which focused also on passenger

10   buses as well, Judge.  And so now, at 58 years old, almost 60

11   years old, Mr. Montes Patino, having otherwise led a law

12   abiding life, Judge, does not require a lengthy sentence to

13   rehabilitate him or punish him, and so we'd ask the Court to

14   take those things into account.

15           The Guideline in this case is a very high Guideline

16   and, obviously, you know, it's based on the amounts of

17   currency.  However, in Mr. Montes Patino's case, because of his

18   age, because of his law abiding life, because he has a work

19   history we'd ask the Court to take those things into account

20   and give him a variance in the Guidelines, and consider a

21   sentence of 120 months.

22           **THE COURT:**  Well, I mean, you're asking me basically

23   to reduce a sentence by, let's see, let's talk about low ends,

24   142 months, which is almost 12 years, for no reason other than

25   before this he had lived an otherwise law abiding life.

1          But when you talk about rehabilitation he's a

2    fugitive.  How do we evaluate remorse and rehabilitation and

3    deterrence when he's getting an adjustment for obstruction of

4    justice?

5          I mean, you are making all of the right arguments for

6    him on the record, there's only so much you can -- I understand

7    he was a lawful permanent resident; otherwise law abiding,

8    smart individual, some college from Mexico, but it becomes very

9    difficult to say he's a person with potential for

10   rehabilitation when he has voluntary absconded himself.

11          **MR. BALLI:**  Well, and, Judge, what I'd like to add is

12   typically in a case like this where if, you know, it's true

13   that he is a fugitive then he could also be charged for that.

14          **THE COURT:**  Right.

15          **MR. BALLI:**  The Court at that time, whatever

16   sentencing court would deal with that if he is charged with

17   that, (indisc.) will be, but more than likely he would be if

18   that's the case, could consider a consecutive sentence to that

19   based on what information they have about, you know, his

20   whereabouts --

21          **THE COURT:**  Right.

22          **MR. BALLI:**  -- and what it is that happened.  And so

23   at almost 60 years old, 120, 70, puts him at 70 years old and

24   then any potential sentence on top of that put him at, you

25   know, 72 or 75, possibly even 80 years when he gets out of

20

1   prison so --

2           **THE COURT:**  Well, that's assuming they ever actually

3   catch him.

4           **MR. BALLI:**  Yes.  Yes, Judge.

5           **THE COURT:**  But I'm aware that he could be charged

6   with other matters, but in this case he scores above the

7   maximum statutory penalty, 262 to 327, and so to say "Well,

8   let's just slash it by almost 14 years just because he's an

9   older individual is really, I don't think, appropriate.  And

10  you mentioned the other facts, he is going to lose his

11  permanent resident status and so forth.

12          Government, do you want to say anything?

13          **MR. MORENO:**  Your Honor, I think because it scores so

14  high I understand that if the statutory maximum becomes the

15  only reliable Guideline range because what we had originally

16  requested is a Guideline -- a sentence within the Guideline

17  range when it was, you know, 210 and 262, I think now with all

18  of the added charges he's gotten way above that and so I think

19  the only sentence that fits within the Guideline now is the

20  maximum sentence under the statute issues, 20 years.

21          Given the Defendant's conduct and their participation

22  in this very extreme large money laundering scheme, I would

23  remind the Court that, you know, there was testimony in the

24  trial that they were aware not only of what was going on in

25  this particular vein of the money laundering scheme, but also

1    familiar with some of the going ons that were going -- that

2    were happening in California and on the West Coast, and so they

3    were aware of the large scope of this organizational venture to

4    launder money in this fashion, and so I think that the

5    statutory maximum is the adequate sentence in this case given

6    their score and given their conduct in this offense, your

7    Honor.

8              **THE COURT:**  Okay.  And I will say just for the

9    record, in case anybody is wondering, Judge Alvarez was kind

10   enough to help cover some of the sentencings in May because I

11   was working on Part 2 of my LO Alum at Duke University so I was

12   out of the state and was not able to handle those other

13   matters.

14            I will say, obviously, I have reviewed the docket

15   sheet since then and I saw that she did a couple of variances,

16   but those Defendants, of course, all came in to court, they

17   were out on bond as well and came into court.

18            And I will also note that I was surprised by the

19   variances because having sat as a trial Judge I don't know that

20   I would have varied but, you know, when we turn over a PSR the

21   Judge evaluates all of the facts and all of the evidence and

22   arguments and she believed it was appropriate and obviously I

23   am not, in any way, commenting on that, I'm just simply saying

24   that having been the trial Judge I don't know that I would have

25   varied, but we'll just leave it at that.

1          But in this case if there isn't anything further,

2   Probation, I will adopt the report.  It is correctly scored.

3          I have looked at all of the 3553 factors, I've heard

4   argument from counsel.

5          But beyond hearing argument from counsel I have

6   reviewed the very detailed objections and the replies and

7   Probation's take on them and my own review of the law and the

8   evidence and, again, I was the trial Judge in this particular

9   case and I believe a sentence of 20 years is appropriate,

10  that's 240 months.

11         It will be followed by a term of supervised release

12  of three years.

13         No -- well, was there a recommendation for a fine,

14  Probation?

15         **PROBATION OFFICER WEISS:**  Not in this Defendant, your

16  Honor --

17         **THE COURT:**  Okay, so --

18         **PROBATION OFFICER WEISS:**  -- he was a Mexican

19  national so we pretty much figured he's going to be deported.

20         **THE COURT:**  No ability to pay a fine.  All right, so

21  no fine.  No restitution.

22         $100 special assessment.

23         A special immigration-related condition, and all

24  applicable standard and mandatory conditions will also be part

25  of the Judgment.  Of course there's notice of what those are in

1    the PSR.

2            Mr. Balli, if I recall correctly before your client

3    decided not to show up for the actual Sentencing hearing you

4    had already reviewed the PSR with him, he just didn't show up

5    and I think it even caught you by surprise that he wasn't in

6    court.

7            **MR. BALLI:**  Yes, your Honor.  We had -- I had

8    reviewed the Presentence Investigation Report with him.  He was

9    just coming down a few days before the sentencing to prepare

10   him for sentencing, and then his wife was going to meet with

11   Mr. Pena and prepare for sentencing, I assume --

12           **THE COURT:**  Right.

13           **MR. BALLI:**  -- but at least that was my understanding

14   was that they were -- she was also going to meet with Mr. Pena

15   and prepare for sentencing, but the PSR was reviewed with him.

16           **THE COURT:**  Had been reviewed.  And that's my

17   recollection of that as well.

18           And, you know, I guess also for the record this is

19   kind of one of those cases where Defendants should not have

20   been out on bond, but I didn't set a bond, I think it was set

21   somewhere in Dallas and it was a personal recognizance bond so

22   it's kind of one of those lessons to be learned for the future.

23   When someone is facing this much time it's almost -- well, I

24   won't say anything else.

25           You know, he decided to deport himself versus doing

1    20 years and then being deported, so obviously a mistake to

2    have this individual out on bond, but that was not my call.

3            He does have a right to appeal so, Mr. Balli, I know

4    you haven't spoken to him.  He apparently, I guess, has a phone

5    that's still voicemail operable, so I would encourage you to

6    leave him a voicemail, let him know what the sentence is and

7    talk to him about the right to appeal or let him know he has a

8    right to appeal the sentence, 14 days to file a Notice of

9    Appeal.

10           Other than that at some point there will be the

11    formal Judgment, he'll get a copy of that.  I would also

12    encourage you to send that to the last known address or send it

13    to family members or do whatever you think is best in that

14    regard.

15           Government, do you want to add anything?

16           **MR. MORENO:**  Sorry, I think that the one thing I

17    forgot to check yesterday was where we were or whether he was

18    involved in a forfeiture count.  They may have not included

19    that.

20           **THE COURT:**  I don't know.  Probation, was there

21    Notice of Forfeiture?

22       **(Counsel confers with Probation)**

23           **THE COURT:**  Because usually -- Count makes the

24    conspiracy to launder money Count One --

25       **(Judge/Counsel confer)**

1              **MR. MORENO:**  No, we have (indisc.), I was trying to

2       remember --

3              **THE COURT:**  Well, Government, if you'd like, if you

4       want to just go back and check on that.  I know that some

5       Motions had been filed as to some of these other Defendants,

6       but go ahead and check if it applies to Mr. Patino.  If he was

7       here he'd be given a opportunity to allocute as to any

8       forfeiture, but he's not here.

9              Mr. Balli, do you know anything about that?  Do you

10      want to say anything on forfeiture?  Does it apply to your

11      client, does it not apply?

12             **MR. BALLI:**  Let me review that.  I thought that it

13      did.

14             **THE COURT:**  Mr. Moreno, I'm looking here at a June

15      27, 2019 Preliminary Order of Forfeiture against Mr. Patino for

16      the amount of $155,530, and that was entered in June of 2019.

17             **MR. MORENO:**  Yes, so then maybe we were just pending

18      the Final Order on the pending -- the remainder of his

19      sentencing so.

20             **THE COURT:**  Right.  So, Mr. Balli, there is a

21      Preliminary Order.  Do you want to object to it for purposes of

22      the record?

23             **MR. BALLI:**  Yes, Judge.

24             **THE COURT:**  All right.  Mr. Balli objects, Mr. Patino

25      can't allocute because he's not here and, again, he chose not

1    to be here and so, Government, if you'll just submit the

2    request for the Final Order of Forfeiture in writing that will

3    be granted.

4              **MR. MORENO:**  Thank you, your Honor.

5              **THE COURT:**  Is there anything further as to Mr. Luis

6    Montes Patino?

7              **MR. MORENO:**  No, your Honor.

8              **MR. BALLI:**  No, your Honor.

9              **PROBATION OFFICER WEISS:**  Your Honor, I'm sorry.

10   Just, I guess, for the purpose of stating the reasons in this

11   court, I know the Defendants span the Guideline ranges --

12   exceeded 24 months and the Court imposed a sentence of 240.

13             **THE COURT:**  Right.

14             **PROBATION OFFICER WEISS:**  The reason for the specific

15   sentence, I guess, the statement of reason is that's the only

16   option --

17             **THE COURT:**  Well, he scores way above --

18             **PROBATION OFFICER WEISS:**  Way above, yes.

19             **THE COURT:**  -- the statutory maximum, and the Court

20   believes it to be correctly scored way above the statutory

21   maximum and the Court believes that all of the different

22   adjustments are appropriate, that his role in this case was

23   significant and other than saying that it's properly scored and

24   that it's actually a lower sentence than his Guideline range.

25   I'm not sure we need to add anything else beyond that.

27

1          **PROBATION OFFICER WEISS:**  Yes, your Honor.

2          **THE COURT:**  Thank you.  Thank you, everyone.

3          Thank you, Mr. Balli, I know you have a trial to get

4  to.  Thank you.

5       **(This proceeding was adjourned at 8:32 a.m.)**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **January 28, 2020**
        **Signed**                                    **Dated**


              ***TONI HUDSON, TRANSCRIBER***